# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

**UNITED STATES OF AMERICA**
        Plaintiff,

    v.                                           Case No. 06-CR-340

**NEDJO IKONIC**
        **Defendant.**

## SENTENCING MEMORANDUM

Defendant Nedjo Ikonic pleaded guilty to two counts of making false statements on an immigration application, contrary to 18 U.S.C. § 1546(a), and I set the case for sentencing. In imposing sentence, I first calculate the applicable sentencing guideline range, then determine the final sentence under all of the factors set forth in 18 U.S.C. § 3553(a). See, e.g., Gall v. United States, 128 S. Ct. 586, 596 (2007); United States v. Bush, 523 F.3d 727, 729 (7th Cir. 2008); United States v. Holt, 486 F.3d 997, 1004 (7th Cir. 2007).

### I. GUIDELINES

The base offense level for a violation of 18 U.S.C. § 1546 is 8 under U.S.S.G. § 2L2.2. Based on his guilty plea, defendant qualified for a 2 level reduction for acceptance of responsibility under U.S.S.G. § 3E1.1, for a final level of 6. Based on his lack of prior record, defendant fell in criminal history category of I. Level 6 and category I produce an imprisonment range of 0-6 months.

### II. SECTION 3553(a)

**A.    Sentencing Factors**

In imposing the ultimate sentence, the district court must consider:

> (1) the nature and circumstances of the offense, and the history and characteristics of the defendant;
>
> (2) the need for the sentence imposed–
>
> > (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
> >
> > (B) to afford adequate deterrence to criminal conduct;
> >
> > (C) to protect the public from further crimes of the defendant; and
> >
> > (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;
>
> (3) the kinds of sentences available;
>
> (4) the advisory guideline range;
>
> (5) any pertinent policy statements issued by the Sentencing Commission;
>
> (6) the need to avoid unwarranted sentence disparities; and
>
> (7) the need to provide restitution to any victims of the offense.

18 U.S.C. § 3553(a).

After considering these factors, the court must impose a sentence that is "sufficient but not greater than necessary" to satisfy the purposes of sentencing set forth in § 3553(a)(2). The court must give respectful consideration to the guidelines in determining a sufficient sentence, Gall, 128 S. Ct. at 594, but it may not presume that the guideline sentence is the correct one, Rita v. United States, 127 S. Ct. 2456, 2465 (2007). Rather, the court must make an individualized assessment based on all of the facts presented and, after settling on the appropriate sentence, adequately explain that decision to allow for meaningful review and to promote the perception of fair sentencing. Gall, 128 S. Ct. at 597.

2

**B.    Analysis**

　　**1.    The Offense**

This case arose out of the conflict between Serbs, Muslims and Croatians in the former Yugoslavia. Defendant, a Bosnian Serb born in Bosnia-Herzegovina, sought admission to the United States as a refugee, claiming fear of returning to Bosnia on account of his being a Bosnian Serb and fear of persecution from the Bosnian government controlled by Muslims and Croatians. Defendant made several false statements in his application, including that from May 1992 to the time of the application he worked as a part-time night guard, that he fled Bosnia in May 1992 and had not returned since, and that he lived outside Bosnia in the former Yugoslavia after May 1992. During his refugee interview with the U.S. immigration officer, defendant also denied under oath any involvement in the war in Bosnia during the 1990's. As a result of these representations, defendant was granted admission to the United States as a refugee in 2002. He later became a lawful permanent resident.

In actuality, defendant served as a member of the Special Police Brigade in Bosnia during the war and continued to serve as a police officer and to live in Bosnia in the years after the war ended in 1995. Defendant concealed these facts because he knew their disclosure could prevent his admission as a refugee. Defendant had previously tried to gain entrance to Canada as a refugee under similar pretenses, but Canadian authorities denied that application.

Upon his arrest in Greenfield, Wisconsin in 2006, defendant initially denied his police service, but when confronted with documents which showed otherwise he admitted that he had lied on his refugee application. He further stated that he knew telling the truth would have precluded his admission. Under the Immigration and Nationality Act, a person may not receive

3

admittance as a refugee if he has participated in persecution on account of race, religion or nationality, and for the reasons set forth in greater detail later in this decision, defendant's service in the Special Police Brigade, which was subordinated to the Serbian military in and around the area of Srebrenica in July 1995, implicated this disablement.

### 2. The Defendant

Defendant was forty-two years old, with no prior criminal record in this country or in Yugoslavia. As indicated, he worked as a police officer in Bosnia, and after his immigration to the United States he steadily worked as a truck driver. Married for eighteen years, he and his wife, a book-keeper, had two children, ages fifteen and eleven, both students in Oak Creek, Wisconsin. Although the court released him on bail in this case, Immigration and Customs Enforcement ("ICE") later took him into custody and initiated deportation proceedings, which were underway at the time I sentenced him.

### 3. The Sentence

As indicated, the guidelines recommended 0-6 months in this case. Defendant asked for a sentence within the range, but the government argued for an above-guideline sentence of 24 months. In order to assess the government's argument, I had to consider the backdrop of the case, including the conflict in Bosnia and more specifically the events occurring in and around Srebrenica in July 1995, which have been internationally recognized as a genocide.

In 1992, Bosnia declared independence from Yugoslavia. In response, the Bosnian Serbs created their own nation within Bosnia, called the Republika Srpska, establishing their own government, military and laws.[1] As noted above, defendant worked as a police officer in

---

[1] I do not in this decision endeavor to present an exhaustive account of the war, or to detail the inhumanity exhibited by both sides. Rather, I focus on the specific events pertinent

4

Bosnia, and police forces were considered part of the military forces of the Republic Srpska.

In July 1995, Bosnian Serb military forces commenced an assault on the municipality of Srebrenica, home to thousands of Muslims, an area that had been declared a United Nations "safe zone." Thousands of Muslim men surrendered to Serb forces during the offensive but rather than being treated as prisoners of war most were summarily executed. Many were buried in mass graves. During this offensive, a police unit under defendant's command was ordered to the area to support the Serbian military operation, and specifically ordered to secure an important road. The government indicated that an investigation by the International Criminal Tribunal for the Former Yugoslavia ("ICTY") revealed that the actions of defendant's unit on that road, in the area of Konjevic-Polje, may have served to facilitate the killings. Indeed, at the time of sentencing, defendant faced genocide charges in a Bosnian court arising out of his actions, and the government provided a copy of the warrant issued by that court.

However, the government did not ask me to directly punish defendant for what he may have done in Srebrenica in July 1995, or to decide whether he directly participated in war crimes. The government conceded, appropriately, that those events were better addressed in a foreign tribunal. The government instead argued for a greater sentence in this case because (1) defendant falsely claimed refugee status in order to evade possible responsibility for human rights abuses, and (2) the United States has a strong interest in deterring possible human rights violators from gaining entry into this country to evade responsibility for their acts abroad.

---

to defendant's crimes.

5

The record did not enable me to determine precisely what defendant did or did not do around Srebrenica in July 1995. The parties agreed that the military conscripted police units into service in the war, and that defendant and his unit were in the area. Defendant denied participation in any displacement, executions or burials. He also presented evidence that his unit was not trained for serious combat operations and suffered from a high rate of desertion and lack of discipline. He claimed that they simply guarded traffic on the road. However, even if, as he claimed, his unit was there principally to secure traffic, this action probably did facilitate at least some of the atrocities that occurred in Srebrenica. I made quite clear that I was making no finding that defendant personally participated in any war crimes. However, I found it unlikely that he would be unaware that anything was going on given his leadership position with the police unit.[2]

Rather than speculating about war crimes,[3] I focused on imposing a sufficient sentence for the crime before me – fraud in acquiring refugee status in this country. In making that determination, I found it appropriate to consider the need to deter those who seek such status as a means of possibly evading responsibility for acts of persecution. Further, I agreed that crimes of this sort may be more severe when the person seeking refugee status conceals facts

---

[2]The government explained that defendant and his unit occupied a route in the direct path of fleeing Muslims. And, although the parties disagreed over the precise distance, it was undisputed that mass murders occurred within several miles of that location. The government indicated that video and photographic evidence depicts police officers, armed with long guns and wearing the Jahorina training center patch also found on defendant's uniform, arresting Muslims in the area. Thus, the evidence showed that defendant was in a position of command and control in an area where war crimes were committed.

[3]Defendant argued that it was not possible in this proceeding to confront his accusers related to any war crimes. I avoided making any findings on those issues and instead based the sentence on the crimes in front of me.

6

which may show that he engaged in persecution, or at least make it more difficult for immigration authorities to make a proper determination on that issue.

I found two specific aggravating factors in this case, which made it somewhat more serious than the typical case under U.S.S.G. § 2L2.2.[4] First, defendant previously attempted to gain entry into Canada via similar misrepresentations. When that effort failed, he re-tooled his application and presented it to the United States, which granted him admission. This showed a pattern of dishonesty and disrespect for the law.[5]

Second, I found defendant's lies in this instance more blameworthy than the usual lies on an immigration document. Typically, offenders omit information in order to increase their chances of admission to the United States, where they hope to find a better life.[6] In this case, defendant sought admission as a refugee, i.e. as someone who feared persecution, yet he covered up his own military/police service during the war in Bosnia, facts which may have suggested to immigration authorities not only that he was not the persecuted, but that he may himself have engaged in persecution. This nation is rightly proud of its practice of welcoming those subject to persecution and in need of protection. Such status is seriously abused when someone in defendant's position fraudulently acquires it. Whether or not defendant personally

---

[4]Section 2L2.2 covers various sorts of immigration fraud, including fraudulently acquiring documents relating to naturalization or citizenship, fraudulent marriage to evade immigration laws, and fraudulent acquisition of a passport. It is not limited to refugee cases.

[5]Defendant noted that the United States application asked only about military – not police – service, and that his service was technically as a police officer. However, the government noted that the Canadian form did ask about police service, and defendant concealed his service from Canadian authorities.

[6]For example, I recently heard a case where the defendant, a Mexican national attempting to gain citizenship, lied about a previous arrest and conviction, which may have precluded naturalization.

7

engaged in war crimes in and around Srebrenica, the mass execution of men and boys there has been internationally recognized as probably the worst mass killing on the continent since World War II. Concealment of the facts relating to defendant's status as the commander of a police unit stationed in the area made this case more serious than the usual § 1546 case.

I further agreed with the government that the United States has a strong interest in deterring those who conceal facts like this from obtaining refugee status. In this case, defendant also lied about his presence in Bosnia <u>after</u> the war. He remained in that country working as a police officer, and his attempt to seek admission to the United States followed the commencement of legal proceedings against those responsible for war crimes. I found it likely that evading possible war crimes prosecution was at least part of his motivation; given the genocide action recently commenced in the Bosnian court he certainly had a reasonable fear that he faced possible liability, like others before him. In his statement, defendant claimed that after the war ended he could not return to his home because that territory had been awarded to the Muslim side, and in fact his house had been destroyed. He also stated that he was worried about the safety of his family. Given the fact that defendant remained in Bosnia, living and working in Zvornik, after the end of the war, I found that statement unpersuasive. I did not dispute that, as defendant indicated, he could not return to his original family home in Ilijas. However, the record was clear that he remained living and working in Zvornik, Bosnia. I also did not doubt that, as he claimed, he had been told by persons assisting Serbian applicants that if he told immigration authorities about his police service he would not be admitted. But this did not diminish his crimes.

Thus, I agreed that this offense was somewhat more serious than the typical immigration fraud case. I had to balance the severity of the offense and the need to deter with the fact that

8

defendant did not otherwise present a threat to the public. He had otherwise lived a pro-social life, working and supporting his family, he had no other record, and the circumstances giving rise to these crimes seemed unlikely to recur. Further, he faced almost certain removal from this country. Finally, to the extent that he did commit crimes in Bosnia, he would face punishment for such conduct in an appropriate tribunal.

Under all of the circumstances and balancing these factors, I found a sentence of 12 months sufficient but not greater than necessary. In many ways, I believed that what would come later would have far more severe consequences than anything I did.[7]

### III. CONCLUSION

Therefore, for these reasons and those stated on the record at the sentencing hearing, I committed defendant to the custody of the Bureau of Prisons for 12 months on each count to run concurrently. Because supervision was not required by statute, because defendant had no correctional treatment needs, and because he would likely be deported, I imposed no supervised release. Other terms and conditions of the sentence appear in the judgment.

Dated at Milwaukee, Wisconsin, this 26th day of February, 2009.

/s Lynn Adelman
_____
LYNN ADELMAN
District Judge

---

[7]Defendant argued that most similarly situated individuals across the county had received sentences within the guideline range. Avoidance of unwarranted disparity is something I must consider in imposing sentence, 18 U.S.C. § 3553(a)(6), but under the Booker advisory guideline regime, disparity if "unwarranted only if the judge fails to provide sufficient reasons for the difference, grounded in the § 3553(a) factors." United States v. McGee, 479 F. Supp. 2d 910, 913 (E.D. Wis. 2007). I did not have before me much in the way of specifics on those other cases, and I have herein set forth those aggravating factors warranting an above-guideline sentence in this case. The government also indicated that it had in those other cases generally asked for a guideline sentence.